UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 18-CR-10256-1-IT |
| | ) | |
| ANGEL LUIS MORALES | ) | |
| | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

1. **Introduction**

   Angel Luis Morales (hereinafter Morales) left Puerto Rico at a young age to pursue better employment opportunities. He had no criminal history, but he remained plagued by deep seeded depression stemming from childhood abandonment that made it difficult for him to cope with life's ordinary demands.

   Indeed, Morales has an alarming history of lewd public behavior. He lived a significant portion of his life with no criminal history and has not acted out in a violent manner towards other individuals. Continued punishment of Morales that overlooks the need for adequate mental health treatment in favor of an incremental prison sentence is greater than necessary to achieve the sentencing goals of 3553(a). A sentence of 15 months, followed by five years of supervised release, is sufficient to address Morales's noncompliance with sex offender registration and protect the community, while offering United States Probation sufficient time to evaluate unaddressed sex offender treatment options.

2. **Defendant's Personal History**

   Morales was born in Reparto Horizonte, Yabucoa, Puerto Rico. His parents Angel and Claribel made no effort to provide him with parental support. Both parents abandoned

1

Morales when he was only five months old. Morales's mother left for the United States to start a new family. Morales's father was a drug addict who stayed in Puerto Rico, but rarely visited his son. Angel, the father, was killed in 1996 under circumstances that were never explained to Morales. The death of Morales's father was a defining moment in his life because; although their relationship was already fractured, it finalized his separation from the two individuals who were obligated to unconditionally care for him. This moment marked the beginning of a caring relationship with his grandfather that would ultimately ended in a manner that further reflected the growing sense of abandonment Morales has experienced.

Morales's paternal grandfather, Emiliano Ortiz, vowed to raise him. Ortiz's job as a grocery store clerk, along with public assistance, and Morales's social security benefits,[1] contributed to the cost of raising Morales. Although the family lived in poverty, Ortiz found ways to always provide Morales and his cousins with clothing, food and school supplies. Unfortunately, Morales's grandfather died in 2001, and, at twelve years old, Morales's sense of family was again shattered. Sure, he has fond memories of his relationship with his grandfather; but, he did not share that bond with his grandfather's second wife, Lourdes Fernandez. Fernandez quickly began to express her view that Morales was a financial burden rather than a child in need of basic needs. Fernandez did not appear to outright squander Morales's social security benefits, but she did absorb the benefits into daily household expenses and treat Morales like an outsider from the family. After losing the only person that truly cared for him, Morales felt consistently depressed. He began to question whether he existed only to provide social security benefits to Lourdes Fernandez's household.

---

[1] Although unconfirmed, undersigned counsel reasons that the death of Morales's father is linked to the Social Security benefits. A response to undersigned counsels request for Social Security records is still pending.

Despite these hardships, Morales showed promise as a youth. He was able to graduate high school in 2006. Following high school graduation, he matriculated to the Universidad del Turabo in Yabucoa, Puerto Rico and completed one year worth of course work. Hardship hit Morales once again when Fernandez kicked him out of his grandfather's home for not paying bills. Morales's social security benefits stopped after he turned eighteen. Morales mistakenly assumed that some money remained to assist with paying for university – Fernandez informed him that there was nothing left for him. Upon hearing of employment opportunities in the Midwest, Morales left for the United Stated because he was no longer able to supplement his education with the added expense of housing and basic living expenses.

Morales moved to the United States in 2008, first living in Wisconsin. He began working on farms across Wisconsin and Iowa. He made it to Boston in 2013 working temporary jobs until finding employment for a sanitation company. Morales has moved intermittently over the years, leading a transient lifestyle. As Morales traveled across the country, searching for whatever work he could find, he remained tormented by the pain and followed by psychological dysfunction resulting from growing up in a household vacant of the most basic and primary parental care.

3. **Punishment & Treatment**

While a period of incarceration is appropriate, Morales is in desperate need of stability and treatment in his life. Morales has no juvenile history, and the disturbing nature of his public acts of indecency did not occur until he was 20 years old. Indeed, the continual nature of Morales's indecent exposures raises a concern for the Court to protect the public. This concern can be effectively addressed by treatment rather than a longer prison sentence.

Morales has apparently never received the sex offender treatment ordered by the Court in October 2013.[2] Defense counsel requested records from the Massachusetts Treatment Center (MTC), in Bridgewater MA. The records received include a November 2015 general health assessment and diagnostics that indicated obesity. No reference to a psychosexual evaluation, treatment based on such an evaluation, or need for ongoing mental health services are reflected in these records. Undersigned counsel and U.S. Probation Officer Zanini conferred after the Final PSR submission to confirm whether record requests sent out by undersigned counsel and probation reflect prior sex offender treatment – the records do not reflect that Morales received the necessary Court ordered treatment. This is critical because Morales's criminal history of indecent exposure arose in his adulthood and is not of a violent nature. The abrupt change in his behavior as it relates to this one particular type of conduct is unsettling and may be the result of some underlying and treatable neurological or mental health disorder. Neurological or psychological testing can contribute to the determination of a root cause and propose beneficial treatment options. A psychosexual evaluation was certainly envisioned in 2013, but the records do not reflect that such an evaluation occurred. Targeted and meaningful treatment to address Morales's pattern of behavior is more essential to create protecting the public and reducing recidivism – more so than a lengthy prison term.

Often, mandatory terms of imprisonment or supervised release for those branded as sex offenders are overstated or unduly punitive.

> Most people find it difficult to reconcile the hope that rehabilitation is possible with the impulse to push these men to the periphery of society forever. Punitive measures alone, however, have not been found to meaningfully increase community safety.

---

[2] PSR ¶ 33.

> Meanwhile, therapy–when paired with tough parole restrictions–can significantly reduce the chance of re-offending, according to the American Psychological Association.[3]

In this case, Morales can find support and stability through supervised release terms. His employment history is a good indication that he can find suitable employment to help provide the footing for a stable life. Morales's period of supervised release can provide the combination of therapy and supervision that meaningfully reduces the risk of reoffending.

Undersigned counsel proposes that U.S. Probation's Special Condition Number 7 be amended to state: prohibited from using the MBTA subway lines or commuter rail without prior permission from the U.S. Probation office. Conditions of supervised release must be reasonably related to the offense conduct or offender. Morales conduct in question has all occurred on MBTA subway lines. Applying an MBTA ban to subway lines and commuter rail lines appears to be the most reasonable application to Morale's situation. He still must traverse the Boston area and requiring preapproval for all MBTA travel will likely be unnecessary, cumbersome, and unmanageable for impromptu legitimate travel.

4. **Conclusion**

For the foregoing reasons, Morales submits that a sentence of 15 months is a substantial sanction for the crime he committed. The sanction is appropriate for the offense of failure to register and serves as an adequate specific and general deterrent. What will make the most difference for Morales is a period of time in a halfway house, coupled with meaningful conditions to treat his mental issues for long-term success. Protection of the

---

[3] http://time.com/5272337/sex-offenders-therapy-treatment/

public will be greatly served by a psychological evaluation, followed by a 6 months stay in a halfway house after release, and five years supervision.

ANGEL LUIS MORALES
By his attorneys,

*/s/ W. Jamiel Allen*
W. Jamiel Allen
  AZ Bar #024631
Federal Defender Office
51 Sleeper Street, Fifth Floor
Boston, MA  02210
Tel: 617-223-8061

## CERTIFICATE OF SERVICE

I, W. Jamiel Allen, certify that a copy of this document has been served on all counsel of record via ECF filing on February 4, 2019.

/s/ W. Jamiel Allen
W. Jamiel Allen